UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LEONARD HALFIN, | ) | NO. CV-06-2615-RHW JPH |
| | ) | |
| Petitioner, | ) | REPORT AND RECOMMENDATION TO |
| | ) | TERMINATE STAY AND TO |
| v. | ) | DENY HABEAS CORPUS PETITION |
| | ) | |
| | ) | |
| ROBERT A. HOREL, | ) | |
| | ) | |
| Respondent. | | |

**THIS MATTER** comes before the Court on Petition For Writ of
Habeas Corpus pursuant to 28 U.S.C. § 2254 (Ct. Rec. 1, 7).
Petitioner Leonard Halfin is proceeding pro se. Respondent is
represented by Robert C. Cross, a Deputy Attorney General for the
State of California.

## BACKGROUND

Halfin is a state prisoner currently in the California
Department of Corrections and Rehabilitation, incarcerated in
Vacaville, CA.

After entering a negotiated guilty plea[1] Halfin was found
guilty of second degree murder and sentenced on December 10, 1990,
in Alameda County Superior Court to fifteen years to life (Ex. A).
Halfin does not challenge his conviction and sentence in these
proceedings.

---

[1]Halfin pleaded guilty (no contest) to second degree murder
in exchange for the dismissal of possessing cocaine for sale
(Section 1135.5) and reduction of the first degree murder charge
(Section 187)(Ex. C at page 4, Ex. G at page 1).

REPORT AND RECOMMENDATION TO DENY HABEAS CORPUS PETITION - 1

1       On October 28, 2004, Halfin attended a parole consideration
2   hearing. The Board of Prison Terms (BPT) denied him parole (Ex. B
3   at 57).

4       Halfin timely filed a petition for habeas corpus relief in
5   the Alameda County Superior Court. The Superior Court denied
6   Halfin's petition, finding that the record before the Board fully
7   supported their findings and conclusions. The court cited *In re*
8   *Rosenkrantz, 29 Cal. 4th 616, 652, 658, 682* (2002) in support of
9   its decision. (Ex. D, Alameda Superior Ct. Order dated March 8,
10  2005).

11      After receiving the Superior Court's denial, Halfin filed a
12  petition in the California Supreme Court. Citing *In re*
13  *Rosenkrantz*, 29 Cal. 4th 616 (2002), and *In re Dannenberg*, 34 Cal.
14  4th 1061 (2005), the petition was summarily denied. (Ex. E,
15  Supreme Ct. Den. of Habeas Corpus Pet. dated February 8, 2006.)

16      Halfin timely filed this petition on May 18, 2006 (Ct. Rec.
17  10, amended on January 31, 2007 (Ct. Rec. 7). This matter was
18  stayed by the Court pending the issuance of the mandate by the en
19  banc panel of U.S. Court of Appeals for the Ninth Circuit in
20  *Hayward v. Marshall*, 603 F.3d. 546 (9th Cir. 2010)(Ct. Rec. 21).
21  The Court of Appeals has rendered its decision in *Hayward*. The
22  Court now recommends terminates the stay and deciding the case.

23      The transcript of the record made before the Board reflects
24  that the facts underlying the commitment offense and admitted by
25  Petitioner are: On August 10, 1990, Halfin and two other men went
26  to a home to kill a witness, a fifteen year old girl.

27  "Clinton Thomas wanted to rob a rival drug dealer who lived in the
    Brookfield Village area of Oakland, California. He wanted to take
28  his money and drugs. Thomas persuaded [petitioner] Leonard Halfin

REPORT AND RECOMMENDATION TO DENY HABEAS CORPUS PETITION - 2

and Derrick Williams to help him. Thomas told Derrick Williams that Natasha Delone would be at the residence and that she was a snitch. . . Natasha Delone had told the Oakland Police about a murder Derrick Williams had committed on March 31, 1988, in which he shot Bruce Barton to death. Derrick Williams wanted to kill her so she could not testify against him in court.

The three of them planned the crime as follows. Thomas was to break in through the front door and secure the [front] part of the residence with his weapon, a nine-millimeter automatic pistol. Halfin and Williams were to enter the residence to do a room to room search for Natasha Delone. If and when she was found, Halfin was to say, okay, J-Dove, handle your business. This was the signal for Derrick Williams to shoot Natasha Delone. The three disguised themselves by dressing in old clothing and masks and carried out their plan. Halfin was armed with an Uzi submachine gun and Williams with a .38 revolver. After . . . carefully and methodically executing their plan, shooting and killing Natasha Delone, the three of them left the residence. Derrick Williams later admitted that when he and Halfin found Natasha, she raised her hand in surrender and stated – and started shaking. He then shot her once in the chest. At the time of the murder, Natasha Delone was 15 years old. Leonard Halfin was 18 years old. Clinton Thomas was 16 years old. Derrick Williams was 16 years old."

Presiding Commissioner Welch: "... Were you involved in this murder?"

Inmate Halfin: "Yes, Sir." "I was 17." (Ex. B, Hearing Transcript at 12-14). Halfin admitted at the time of the killing, he was a gang member who had been selling cocaine for two years (Ex. B, Hearing Transcript at 17-18)

**ISSUES RAISED/ DEFENSES**

Halfin challenges the Board's determination that he was unsuitable for parole. Halfin alleges three grounds in support of the Petition:

1. The Board lacked "some evidence" and utilized erroneous procedures when it failed to set a parole release date in violation of his rights as protected by due process under the

REPORT AND RECOMMENDATION TO DENY HABEAS CORPUS PETITION - 3

state constitution and the 14th Amendment (Ct. Rec. 7 at 4-5).
Petitioner argues the Board utilized erroneous procedures but does
not specify any. His argument therefore is limited to the way the
Board weighed the evidence:

(a) Halfin was prejudiced at the 2004 Board hearing when he
met 99% of the Board's recommendations but parole was denied
based on the nature of the crime, his threat to public safety, and
his failure to sufficiently participate in "beneficial self-help
and programming." Petitioner argues the evidence relied on is
insufficient to substantiate denial of parole. (Ct. Rec. 7 at 4-7;
Ct. Rec. 12 at 1-5).

(b) Similarly, Halfin's positive reports while incarcerated
outweigh all negative factors used to deny parole (Ct. Rec. 7 at
10-15), and there is no evidence in the record supporting a
determination that release would currently unreasonably endanger
public safety (Ct. Rec. 12 at 12).

2. California should adopt the preponderance of the evidence,
rather than the some evidence standard, for reviewing parole
decisions (Ct. Rec. 7 at 8-10; Ct. Rec. 12 at 5-7).

3. The Board's actions deprive Petitioner of his
constitutionally protected rights by creating a sentence
resembling life without the possibility of parole, "an ex-post
facto application of the law" (Ct. Rec. 7 at 16-20).

Respondent admits Halfin's petition is timely and that he has
exhausted his state judicial remedies as to the Board's 2004
denial of parole (Ct. Rec. 11 at ¶ 6). Respondent denies Halfin is
entitled to federal habeas relief under 28 U.S.C. § 2254 because
the state court decision is neither contrary to, nor an

unreasonable application of, clearly established federal law as determined by the U.S. Supreme Court, and, even if Halfin has a federal liberty interest in parole release, he received all the due process to which he is entitled and the state court properly found the Board's decision was supported by some evidence (Ct. Rec. 11 at ¶ 7-8).

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C.§ 2254(d), this court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[2] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[3] The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[4] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are

---

[2] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v.Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[3] *Williams*, 529 U.S. at 412.

[4] *Early v. Packer*, 537 U.S. 3, 10 (2002).

REPORT AND RECOMMENDATION TO DENY HABEAS CORPUS PETITION - 5

1  lacking, "it cannot be said that the state court 'unreasonabl[y]
2  appli[ed] clearly established Federal law.'"[5] When a claim falls
3  under the "unreasonable application" prong, a state court's
4  application of Supreme Court precedent must be objectively
5  unreasonable, not just incorrect or erroneous.[6] The Supreme Court
6  has made clear that the objectively unreasonable standard is a
7  substantially higher threshold than simply believing that the
8  state court determination was incorrect.[7] "[A]bsent a specific
9  constitutional violation, federal habeas corpus review of trial
10  error is limited to whether the error 'so infected the trial with
11  unfairness as to make the resulting conviction a denial of due
12  process.'"[8] In a federal habeas proceeding, the standard under
13  which this court must assess the prejudicial impact of
14  constitutional error in a state court criminal proceeding is
15  whether the error had a substantial and injurious effect or
16  influence in determining the outcome.[9] Because state court
17  judgments of conviction and sentence carry a presumption of
18
19  _____
20       [5]*Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the
    Supreme Court); *see Wright v. Van Patten*,552 U.S. 120, 127 (2008) (per
    curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir.2009);
21  *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the
    difference between principles enunciated by the Supreme Court that are
22  directly applicable to the case and principles that must be modified in
    order to be applied to the case; the former are clearly established
23  precedent for purposes of § 2254(d)(1), the latter are not).

24       [6]*Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation
    marks and citations omitted).
25
         [7]*Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).
26
         [8]*Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v.*
27  *DeChristoforo*, 416 U.S. 637,643 (1974)).

28       [9]*Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard
    set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

REPORT AND RECOMMENDATION TO DENY HABEAS CORPUS PETITION - 6

1   finality and legality, Halfin has the burden of showing by a

2   preponderance of the evidence that he merits habeas relief.[10] In

3   applying this standard, this court reviews the last reasoned

4   decision by the state court.[11] Under AEDPA, the state court's

5   findings of fact are presumed to be correct unless the petitioner

6   rebuts this presumption by clear and convincing evidence.[12] This

7   presumption applies to state trial courts and appellate courts

8   alike.[13]

9                                **DISCUSSION**

10      Halfin's argument centers around his contention that the BPT

11  relied on the commitment offense and ignored other factors that

12  would auger in favor of setting a parole date.

13      1. Commitment Offense and Other Factors

14      The Board found Halfin's actions with regard to the offense

15  were carried out in an especially callous manner, in an execution-

16  style killing, and showed no regard for the life of a particularly

17  vulnerable (15 year old) victim. It also noted the motive for the

18  crime was inexplicable or very trivial in relationship to the

19  crime (Ex. B at 53). The prisoner had a minimal criminal history,

20

21

22

23      [10]*Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v.
    Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal
24  court cannot grant "habeas relief on the basis of little more than
    speculation with slight support").
25
    [11]*Ylst v. Nunnemaker*, 501 U.S. 797, 804-805 (1991); *Robinson v.
26  Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

27      [12]28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340
    (2003).
28
        [13]*Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

REPORT AND RECOMMENDATION TO DENY HABEAS CORPUS PETITION - 7

but somewhat of an escalating pattern of criminal conduct.[14] He had failed prior grants of probation. Selling drugs (earning $1000 a week selling rock cocaine on the street[15]) was an unstable social factor (Ex. B at 53-54). The Board noted Halfin has "programmed in a somewhat limited manner," in that he failed to upgrade vocationally or educationally and has "not fully participated in self-help programs" (Ex. B at 54). The Board also considered Halfin's parole plan to live with his wife[16] in Oakland,  his mother in Gault, or in a halfway house (Ex. B at 33-34, 36-37). The Board reviewed a four year old (2000) psychological evaluation and requested an updated evaluation. They noted Halfin had no disciplinary actions in his file. Two letters recommended against, and two in favor of, parole. Based on these facts, the Board indicated that it was concerned that Halfin was unpredictable and thereby a threat to others (Ex. B at 55-56).

The Board noted Halfin was making progress but needed to obtain his GED and work on vocational plans, particularly in light of his past job as a drug dealer, and continue in appropriate self-help or therapy programs. The Board found Halfin's somewhat positive incarceration behavior did not outweigh the unsuitability factors for parole (Ex. B at 55-57).

---

[14]The record shows Halfin was convicted of attempted robbery in December 1984 and battery or assault in January 1985 (both juvenile), and as an adult for a vehicle code violation in November 1988 (Ex. B at 19-20, Ct. Rec. 7, attached Ex. A at 1).

[15]Ex. B at 22.

[16]Petitioner married for the first time after his incarceration (Ex. B at 23, Ct. Rec. 7 at Ex. A (2005 post hearing psychologist's report at 2)).

REPORT AND RECOMMENDATION TO DENY HABEAS CORPUS PETITION - 8

Halfin argues the BPT ignored the positive changes he had made, but the Board's discussion of his record belies that. The BPT acknowledged Halfin appeared to have family support and places to stay if released. The Board noted opposition to release by the Deputy District Attorney from Alameda County, based primarily on the circumstances of the crime. The Board relied heavily on Halfin's lack of educational and vocational improvement during the fourteen years since he was sentenced for the commitment offense. The record is clear that the BPT considered more than the commitment offense and any prior behavior in determining not to set a parole date.

The factors that the BPT may consider are set forth in Title 15, section 2402 of the California Code of Regulations. Among the factors which may demonstrate unsuitability for release are " ...(1) (A) [t]he [commitment ] offense was carried out in a dispassionate and calculated manner, such as an execution-style murder ... and (E) [t]he motive for the crime is inexplicable or very trivial in relation to the offense ... and (3)[t]he prisoner has a history of unstable or tumultuous relationships with others." The Board noted Halfin's gang ties and drug dealing (Ex. B at 43-45, 54-55).

A state prisoner's right to release on parole or to release in the absence of some evidence of future dangerousness arises from substantive state law creating a right to release and not from any federal constitutional right. *Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010). The California Supreme Court has established that "some evidence" of future dangerousness is an essential condition for parole denial. *In re Lawrence*, 44 Cal. 4th

1181, 1205, 82 Cal. Rptr. 169, 185 (2008). Federal courts
reviewing a due process challenge to the denial of parole in
California decide whether parole rejection was an unreasonable
application of California's "some evidence" of dangerousness
requirement or based on an unreasonable determination of the facts
in light of the evidence. *Hayward* at 563.

In *In re Shaputis*, 44 Cal.4th 1241 (2008), the California
Supreme Court held:

> "[T]he precise manner in which the specified factors
> relevant to parole suitability are considered and
> balanced lies within the discretion of the
> [Board]......It is irrelevant that a court might
> determine that evidence in the record tending to
> establish suitability for parole far outweighs evidence
> demonstrating unsuitability for parole. As long as the
> [Board's] decision reflects due consideration of the
> specified factors as applied to the individual prisoner
> in accordance with applicable legal standards, the
> court's review is limited to ascertaining whether there
> is some evidence in the record that supports the
> [Board's] decision.

This court does not re-weigh the evidence or substitute its
discretion for that of the Board. Under California law, judicial
review of a decision denying parole is "extremely deferential." *In
re Rosenkrantz*, 29 Cal.4th 616, 658 (2002). It is through this
doubly deferential lens that this court reviews the decision of
the Alameda County Superior Court.

Halfin's unstable social history prior to the offense
included dropping out of high school to work selling cocaine as
well as gang membership. In the nearly 14 years of incarceration
from sentencing to the 2004 parole hearing, Petitioner's limited
"programming" included failing to obtain a GED and failing to
upgrade vocationally. His social history after incarceration

appears to include gang involvement.[17] Halfin's parole plans did
not include a job offer or plan, and even his release residence
was unclear (Ex. B at 26). Interestingly, a psychological report
in 2005, after the Board's decision, opined if Halfin's living
situation and job prospects are intact, he would present a low
risk of dangerousness upon release (Ct. Rec. 7, attached Ex. A
2005 psychological report at 5). Unsuitability for parole may be
based on unstable social history, inadequate participation in
prison programs, and inadequate parole plans. See *In re Hosto*, 130
Cal.App.4th 81, 97 (2005)(these factors constituted "some
evidence" in addition to the circumstances of the offense
supporting denial of parole).

In the court's view some evidence (in addition to the
aggravated nature of the commitment offense committed with a
fellow gang member) supports the Board's assessment of Halfin's
current threat to public to safety. Based upon the record before
it, applying *Rosenkrantz, Dannenberg, Lawrence,* and *Shaputis*, this
court cannot say that the decision of the Alameda County Superior
Court affirming denial of parole, finding unsuitability factors in
addition to the underlying commitment offense, was contrary to, or
involved an unreasonable application of, California law or was
based on an unreasonable determination of the facts in light of
the evidence.

///

///

///

---

[17]There is evidence Halfin was "validated in 1997 as a 415
[gang member]," seven years after sentencing (Ex. B at 45).

REPORT AND RECOMMENDATION TO DENY HABEAS CORPUS PETITION - 11

1    2. Standard of review

2    Halfin argues the Board's decision should have been supported

3    by a preponderance of the evidence, rather than "some" evidence

4    (Ct. Rec. 7 at 9-10). He is incorrect.

5    The *Hayward* decision holds that this Court need only decide

6    whether the California judicial decision approving [a] decision

7    rejecting parole was an unreasonable application of the California

8    "some evidence" requirement..." *Hayward*, at 562-63; 28 U.S.C. §

9    2254(d)(2)).

10   Respondent also disagrees that this is the standard, and

11   argues this Court's inquiry is controlled by *Greenholtz v. Inmates*

12   *of Neb. Penal & Correctional Complex*, 442 U.S. 1 (1979)-the only

13   Supreme Court jurisprudence directly addressing the process due in

14   the parole context. The district court is bound by Ninth Circuit

15   precedent. After reviewing the reasonableness of the state court

16   decision under *Hayward's* some evidence standard, as noted, Halfin

17   is not entitled to relief. Halfin presented all of his claims to

18   the state courts. The Alameda Superior Court found "some evidence"

19   in support of the BPT's decision, a decision with which this Court

20   agrees.

21   3. Ex post facto sentence

22   Petitioner argues the Board's actions create a sentence

23   resembling life without the possibility of parole, "an ex-post

24   facto application of the law" (Ct. Rec. 7 at 17-20). He asserts

25   neither a jury nor the sentencing court found he committed his

26   crime in an especially cruel and callous manner (Ct. Rec. 7 at

27   17). Halfin entered a negotiated plea.

28

REPORT AND RECOMMENDATION TO DENY HABEAS CORPUS PETITION - 12

1    Under California law, the Board "may credit evidence
2 suggesting the inmate committed a greater degree of the offense
3 than his or her conviction evidences."[18] To the extent Halfin may
4 be relying on *Apprendi* and its progeny,[19] the Supreme Court has
5 never held that the principle in *Apprendi* applies in the parole
6 context. "[A]bsent a specific constitutional violation, federal
7 habeas corpus review of [state proceedings] is limited to whether
8 the error 'so infected the trial with unfairness as to make the
9 resulting conviction a denial of due process.'"[20] "'Federal courts
10 hold no supervisory authority over state judicial proceedings and
11 may intervene only to correct wrongs of constitutional
12 dimension.'"[21]

13    Having failed to raise an issue of constitutional dimension,
14 Halfin is not entitled to relief on this ground.

15    **IT IS RECOMMENDED,** for the reasons stated, the Stay be **LIFTED**
16 and the Petition **DENIED.**

---

[18]*In re Dannenberg*, 104 P.3d 783, 803 (Cal. 2005) (citing *In re Rosenkrantz*, 59 P.3d 174, 219(Cal. 2002)).

[19]*Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004).

[20]*Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637,643 (1974)).

[21]*Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

1    **IT IS FURTHER RECOMMENDED** the District Court decline to issue

2  a Certificate of Appealability.[22] Any further request for a COA

3  must be addressed to the Court of Appeals.[23]

4                               **OBJECTIONS**

5        Any party may object to the magistrate judge's proposed

6  findings, recommendations or report within fourteen (14) days

7  following service with a copy thereof. Such party shall file with

8  the Clerk of the Court all written objections, specifically

9  identifying the portions to which objection is being made, and the

10  basis therefore. Attention is directed to Fed. R. Civ. P. 6(e),

11  which adds another three (3) days from the date of mailing if

12  service is by mail. A district judge will make a de novo

13  determination of those portions to which objection is made and may

14  accept, reject, or modify the magistrate judge's determination.

15  The district judge need not conduct a new hearing or hear

16  arguments and may consider the magistrate judge's record and make

17  an independent determination thereon. The district judge may also

18  receive further evidence or recommit the matter to the magistrate

19  judge with instructions.

20        See 28 U.S.C. § 636 (b) (1) © , Fed. R. Civ. P. 73, and LMR

21  4, Local Rules for the Eastern District of California.

22

23

24        [22] 28 U.S.C. § 2253 (c); *Slack v. McDaniel*, 529 U.S. 473, 484
25  (2000) (a COA should be granted where the applicant has made "a
     substantial showing of the denial of a constitutional right," *i.e.,* when
26  "reasonable jurists could debate whether (or, for that matter, agree
     that) the petition should have been resolved in a different manner or
27  that the issues presented were adequate to deserve encouragement to
     proceed further.") (internal quotation marks and citations omitted).

28        [23] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

REPORT AND RECOMMENDATION TO DENY HABEAS CORPUS PETITION - 14

1    A magistrate judge's recommendation cannot be appealed to a
2 court of appeals; only the district judge's order or judgment can
3 be appealed.
4    The District Court Executive **SHALL FILE** this report and
5 recommendation and serve copies of it on the referring judge and
6 the parties.
7    **DATED** this 13th day of January, 2011.

8

9                              s/James P. Hutton
10                            JAMES P. HUTTON
                           UNITED STATES MAGISTRATE JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION TO DENY HABEAS CORPUS PETITION - 15